IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ERIN S. MILEY,**

      **Plaintiff,**

v.                              Civil Action 2:19-cv-3206
                                     Judge George C. Smith
                                     Magistrate Judge Kimberly A. Jolson

**COMMISSIONER OF
SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Erin S. Miley, brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). For the reasons set forth below, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

**I.    BACKGROUND**

Plaintiff filed her applications for DIB and SSI on January 1, 2013, alleging that she was disabled beginning September 1, 2007. (Tr. 216–27). After her application was denied initially and on reconsideration, the Administrative Law Judge ( "ALJ") held a hearing on October 28, 2014. (Tr. 31–70). On January 7, 2015, the ALJ issued a decision denying Plaintiff's application for benefits. (Tr. 9–30).

The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1–5). Plaintiff then filed a case in this Court. (*See* Southern District of Ohio, 2:16-cv-540). On December 1, 2016, Judge George C. Smith accepted

a joint motion to remand the case back to the administrative level. (Tr. 859).

A second administrative hearing was held on April 24, 2018. (Tr. 816–52). On May 7, 2019, the ALJ issued an unfavorable decision. (Tr. 785–815).

In lieu of appealing to the Appeals Council, Plaintiff filed the instant case on July 24, 2019 (Doc. 1). This matter is now ripe for resolution. (*See* Docs. 9, 12, 14).

### A. Relevant Medical Evidence

Because Plaintiff's Statement of Errors pertains to physical health, the Undersigned limits her discussion to the same.

In August 2010, Plaintiff presented to Muskingum Valley Health Centers with complaints of lower back pain and swelling of her bilateral lower extremities. (Tr. 345). She was diagnosed with bilateral pedal edema, diabetes untreated, high blood pressure, and chronic right sciatica. (*Id*.).

In January 2012, Plaintiff had her feet evaluated by Dr. Charles Perry, who diagnosed her with diabetic neuropathy and prescribed her medication. (Tr. 472). X-rays of her thoracic spine from February 2012 revealed mild osteophytes. (Tr. 475). In June 2012, Plaintiff began seeing pain specialist Dr. Michael Sayegh. (Tr. 382–83). He noted tender points and tenderness of the mid to lower back, positive bilateral straight leg raise testing, decreased sensation of the bilateral lower extremities, and slight swelling of the bilateral feet. (Tr. 382). Dr. Sayegh diagnosed her with advanced chronic diabetic neuropathy, diabetes-uncontrolled, lumbago, sciatica, pain of the bilateral lower extremities, radiculopathy, anxiety, depression, and sleep disturbance. (*Id*.). He prescribed her medications and recommended an MRI of the lumbar spine. (*Id*.). The MRI revealed degeneration at the L5-S1 level. (Tr. 384). Dr. Sayegh discharged her from treatment in

March 2013 "due to noncompliance with obtaining pain medication, which is noncompliance with her pain contract." (Tr. 395).

In April 2013, Plaintiff underwent a physical examination, which revealed a pigmented lesion between her left fourth and fifth toes and no signs of swelling in the extremities. (Tr. 425). She was diagnosed with diabetes, high cholesterol, high blood pressure, and lower back pain. (*Id.*). In May 2013, Dr. Robert Thompson completed a consultative examination of Plaintiff at the request of the Social Security Administration. (Tr. 441–443). He noted:

> Ms. Miley reports that she is only able to stand or walk for about an hour at a time without resting. She has difficulty doing any type of repetitive bending or lifting. She is unable to walk on uneven surfaces, climb or squat.
>
> There is no impairment with sitting or use of her upper extremities.

(Tr. 443).

In July 2013, Plaintiff alleged worsening pain and reported problems with her gait. (Tr. 560). On physical examination, she had tenderness of her lower back and abdomen. (Tr. 561). She was diagnosed with diabetes, lower back pain, hypertension, high cholesterol, diabetes, and foot pain. (Tr. 561–62).

In March 2014, Plaintiff underwent a diabetes evaluation. (Tr. 572–77). Treatment notes indicate cold feet and no pedal pulses. (Tr. 573). She was provided diabetic shoes and referred for a transmitter implant. (Tr. 574). In June 2014, she reported feeling faint and dizzy and that her feet would frequently swell. (Tr. 578).

In early 2015, Dr. Starr completed an evaluation of Plaintiff related to her referral for a spinal cord stimulator implant. (Tr. 719–21). Dr. Starr noted that Plaintiff walked with a normal gait and maintained a normal posture. (Tr. 720). Her motor strength was grossly intact in the

bilateral upper and lower extremities without evidence of ulcers, diminished sensation, or reduced reflexes. (*Id.*).

In February 2017, Plaintiff saw Dr. Tony Starr for diabetes management for the first time since August 2015. (Tr. 1356–58). Dr. Starr found diminished lower extremity strength but observed a normal gait and reflexes. (Tr. 1357). In April 2017, Plaintiff required treatment for erythrocytosis most likely reactive to hypoxemia secondary to tobacco abuse. (Tr. 1103). She was counseled to quit smoking. (*Id.*).

In November 2017, Dr. Starr noted "moderately-severe" diabetic neuropathy. (Tr. 1675). In January 2018, Plaintiff was seen for an initial podiatry consultation, which revealed evidence of abnormal monofilament sensations and decreased pedal pulses. (Tr. 1680).

## B. The ALJ's Decision

In her decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2012, (Tr. 789), and had not engaged in substantial gainful activity since September 1, 2007, the alleged onset date, (*id.*). She found that Plaintiff suffers from the following severe impairments: diabetes mellitus with neuropathy; degenerative disc disease; chronic obstructive pulmonary disease; obesity with fatty liver; a depressive disorder; an anxiety disorder; and adjustment disorder. (*Id.*). The ALJ, however, found that none of Plaintiff's impairments, either singly or in combination, met or medically equaled a listed impairment. (Tr. 791).

As for Plaintiff's residual functional capacity ("RFC"), the ALJ concluded:

[T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except as follows: the claimant should never operate foot controls. The claimant can only occasionally climb ramps or stairs, balance, stoop, and crouch; however, she should never kneel, crawl, or climb ladders, ropes, or scaffolds. The claimant should avoid all exposure to unprotected heights, all use of dangerous machinery, and all commercial driving.

4

> Further, the claimant is limited to simple, routine tasks in an environment where changes occur no more than approximately ten percent of the workday. She can perform goal-oriented work, but no constant production rate pace work, such as an automated assembly line. The claimant can interact occasionally with coworkers and supervisors. Finally, the claimant can interact with the public up to approximately fifteen percent of the workday, but that contact should not include transactional interaction, such as sales or negotiation.

(Tr. 792–93).

After reviewing the objective medical evidence, the ALJ found:

> While the undersigned considered the collective effect of the claimant's impairments, even in combination, there is no evidence to substantiate a reduction below a sedentary level of exertion. In limiting the claimant to a sedentary level of exertion, the undersigned precluded the claimant from lifting/carrying heavier objects or prolonged periods of standing/walking. The record reflects only sporadic treatment specific to the claimant's COPD, which appears reasonably well controlled with medication despite ongoing cigarette use. The claimant testified that she smokes only half a pack of cigarettes per day, but contemporaneous progress notes show she maintained a pack a day habit. *See* Exhibit 48F/p 25. Whatever the frequency of her tobacco use, the limitation to only a sedentary range of work safeguards the claimant from activities that might precipitate or aggravate her condition. The undersigned also provided numerous postural and environmental restrictions to accommodate any residual impairment related symptomology.

(Tr. 798).

The ALJ then turned to the opinion evidence. She first considered the opinions of the state agency medical consultants, particularly as they related to Plaintiff's ability to walk/stand:

> [T]he undersigned places partial weight on the assessments offered by the State agency medical consultants. *See* Exhibits 3A, 4A, 5A, and 6A. The State agency concluded that the claimant does experience some limitations from her physical impairments, but the evidence of record indicates she could perform the lifting/carrying and sitting requirements of light level exertion, but only stand/walk two hours in an eight-hour workday. This portion of the State agency assessment deserves some weight, but the undersigned did reduce the claimant to a sedentary level of lifting/carrying and sitting. However, in conjunction with the limitation of two hours standing/walking, the State agency also opined that "it is not expected that she is capable of standing/walking more than 1 hr." *See* Exhibit 6A/pl2.
>
> The State agency based this portion of their assessment on the opinion completed by Dr. Thompson in May of 2013. *See* Exhibit 9F/p3. When asked to describe the

claimant's ability to do work related physical activities, Dr. Thompson included that "Ms. Miley reports that she is only able to stand or walk for about an hour at a time without resting." *Id.* While contained in the opinion section, this assessment was based entirely on the claimant's subjective complaint versus objective testing. In fact, the remainder of Dr. Thompson's medical source is generally consistent with the finding reached in this decision and accommodated in finding number five above.

Still, the undersigned places little weight on the State agency and Dr. Thompson's opinions as it relates to their assessment that the claimant is not expected to be able to stand/walk more than one hour. As discussed above, though the medical evidence does occasionally show lower extremity symptoms associated with diabetic neuropathy, it just as often reflects nominal lower extremity complaints and benign clinical findings.

For example, just two months after Dr. Thompson's examination, the claimant's neuromuscular examination did not suggest any significant abnormalities. *See* Exhibit 22F/p2. One of the claimant's primary care providers, Dr. Starr, also regularly documented a normal gait and strength. *See* Exhibits 24F/p2, 29F/p1, 34F/p2 and p9. During Dr. Thompson's examination, the claimant alleged extreme sensitivity when her feet were touched; yet, she continued to drive. The use of car pedals would seemingly belie her complaint of extreme sensitivity. Also, after a car accident in November of 2017, the claimant was observed ambulating at the scene without indication of the need for an ambulatory aid. For all these reasons, the opinions from the State agency and Dr. Thompson concerning the claimant's purported inability to stand/walk even one hour deserve limited weight. A restriction to sedentary work, and by extension a limitation to only two hours of standing/walking, is supported by the substantial evidence of record.

(Tr. 801).

Next, the ALJ assigned "little" weight to the opinion of Dr. Sayegh, who opined that Plaintiff could perform light duty office work, explaining that the opinion "did not provide a function-by functional analysis," and "was not consistent with the longitudinal evidence." (Tr. 801–02).

Finally, the ALJ considered the opinion of Dr. Eldadah:

The undersigned places little weight on the brief opinion offered by Mazen Eldadah, M.D., on March 16, 2012. *See* Exhibit 37F/p4. Dr. Eldadah saw the claimant two days earlier as a new patient secondary to her complaints of diabetic complications. *Id.* At the request of the claimant, Dr. Eldadah indicated that the claimant has an unsteady gait with a tendency to fall. *Id.* She opined that the

6

claimant is unable to walk long distances and will need to use a walker or scooter for better mobility. *Id*. However, Dr. Eldadah provided no evidence, such as clinical examination findings, to support her opinion. Instead, by her own admission, she relied on the claimant's subjective complaints, which were already shown to be largely inconsistent with the evidence of record. Also, it appears Dr. Eldadah saw the claimant just once; thus, she could not provide a reasonably reliable assessment for the entire period at issue. While the claimant does experience some waxing and waning symptoms related to diabetic neuropathy, there is no medical evidence of a sustained inability to ambulate.

(Tr. 802).

## II.  STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

## III.  DISCUSSION

Plaintiff asserts two assignments of error. First, Plaintiff argues that the ALJ improperly

evaluated the opinions of consultative examiner Dr. Thompson. (Doc. 12 at 6–9). Second, Plaintiff contends, contrary to the ALJ's finding, that her obesity affects her ability to ambulate effectively. (*Id*. at 9–11).

**A. Dr. Thompson**

Dr. Thompson, at the request of the Social Security Administration, examined Plaintiff on May 6, 2013. (Tr. 441–43). On physical examination, Dr. Thompson noted that Plaintiff was 5'1 and 212 pounds. (Tr. 442). Her gait and station "reveal[ed] her to walk independently on flat, level surfaces." (*Id*.). She had a "very slow" gait pattern. (*Id*.). She told Dr. Thompson "that she [] walk[ed] in from the parking lot by herself" for the exam. (*Id*.). She had a reduced range of motion in her spine but could "arise[] independently from a supine to a sitting position" and had negative straight leg raising tests. (*Id*.). She was "unable to squat or kneel due to complaints of pain." (*Id*.). She had "no motor weakness, muscle atrophy or muscle fasciculations" and could "grasp and manipulate with either hand." (*Id*.). She had "diminished sensation to light touch, pin and vibration and position which [was] quite severe in a stocking glove distribution in both lower extremities and both feet" and "[b]oth of her feet [were] extremely sensitive to the touch." (*Id*.).

Following his examination, Dr. Thompson noted diagnoses of severe diabetic neuropathy and chronic lower back pain of undetermined etiology. (Tr. 443). He made the following "[s]tatement of patient's ability to do work related physical activities based on subjective reporting and objective findings":

> Ms. Miley reports that she is only able to stand or walk for about an hour at a time without resting. She has difficulty doing any type of repetitive bending or lifting. She is unable to walk on uneven surfaces, climb or squat.
>
> There is no impairment with sitting or use of her upper extremities.

(*Id*.).

The ALJ assigned "little weight" to Dr. Thompson's opinion as it related to Plaintiff's ability to walk/stand, explaining that Dr. Thompson based that finding on Plaintiff's subjective complaints rather than objective findings. (Tr. 801).

Otherwise, the ALJ found Dr. Thompson's opinion "generally consistent with the finding reached in this decision and accommodated in finding number five above." (*Id*.). But the ALJ's RFC finding says otherwise. Despite Dr. Thompson's limitation that Plaintiff is unable to climb or squat, the RFC permits Plaintiff "occasionally" to climb ramps and stairs, stoop, and crouch. (Tr. 792). Similarly, Dr. Thompson opined that Plaintiff would have "difficulty doing any type of repetitive bending or lifting," but the RFC is silent as to this limitation. (*See id*. at 792–93).

Up front, the Undersigned notes that "when an ALJ fails to incorporate all of the limitations opined from a medical source who received great weight, it does not follow that the ALJ's explanation is, therefore, procedurally inadequate, or that the RFC was not supported by substantial evidence.'" *Scott v. Berryhill*, No. 3:18-CV-28-HBG, 2019 WL 1290880, at *4 (E.D. Tenn. Mar. 20, 2019) (quoting *Moore v. Comm'r of Soc. Sec.*, No. 1:13-cv-00395, 2013 WL 6283681, at *7 (N.D. Ohio Dec. 4, 2013)).

But because the ALJ appeared to accept Dr. Thompson's opinion, apart from the restrictions on walking/standing, the ALJ was required to do more than she did in this case. This Court's decision in *Hankinson v. Commissioner of Social Security* provides guidance here. *See* 2019 WL 6695821, at *4 (S.D. Ohio Dec. 9, 2019). The ALJ in that case, like the ALJ here, found that the state agency consultants' assessments were "generally consistent with" with the evidence of record. *Id*. But despite "appear[ing] to adopt [these] opinions," the ALJ did not adopt their limitations regarding taking public transportation and traveling to unfamiliar places. *Id*. More significantly, "[n]owhere in his opinion [did] the ALJ explain why he failed to incorporate the

state-agency physicians' limitations even though he gave their assessments great weight." *Id*. The Court noted that, "[w]hile it is true that the ALJ is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding, the ALJ must nevertheless explain why he failed to include articulated limitations where he has found that the RFC is consistent with that medical opinion." *Id*. (collecting cases) (quotation marks, citations, and alterations omitted). Ultimately, the ALJ's failure to do so, "rendered the Court unable to assess the ALJ's reasoning and understand why he did not incorporate the state-agency physicians' limitations of public transportation and travel to unfamiliar places in his RFC." *Id*.

The ALJ's opinion demonstrates these principles. For example, the ALJ rejected Dr. Thompson's opinion regarding Plaintiff's inability to walk on uneven surfaces and Plaintiff's reports that she could not walk/stand for more than an hour at a time. (Tr. 801). And she explained why. She found that Dr. Thompson's opinion on Plaintiff's ability to walk/stand was "based entirely" on Plaintiff's subjective complaints and that the record documented Plaintiff's ability to ambulate. (*Id*.). It is, therefore, understandable why the ALJ did not include this restriction in Plaintiff's RFC.

Yet, the ALJ's analysis regarding Dr. Thompson's limitations on squatting, climbing or repetitive lifting/bending does not provide a similar roadmap. As noted, the RFC permits Plaintiff to "occasionally" climb and crouch. (Tr. 792). And it does not limit Plaintiff from repetitive bending/lifting. (*Id*.). Dr. Thompson found Plaintiff unable to do these things. (Tr. 443). But the ALJ did not consider these limitations when considering the medical evidence. (*See* Tr. 793–99). Without an explanation for these departures, the Court is "unable to assess the ALJ's reasoning and understand why [she] did not incorporate" those limitations in the RFC. *Hankinson*, 2019 WL 6695821, at *4.

The Commissioner makes several arguments against remand. First, the Commissioner asserts that "the RFC finding generally accounted for various postural limitations, similar to those indicated by Dr. Thompson." (Doc. 14 at 6). Second, the Commissioner cites evidence purportedly showing that Plaintiff does not need additional limitations. (*Id*. at 6–7). Finally, the Commissioner contends that any error was harmless because such postural activities are not necessary to complete the jobs identified by the Vocational Expert ("VE") and relied on by the ALJ at step five. (*Id*. at 8–9).

The Undersigned agrees that, as a general matter, sedentary jobs do not require frequent crouching, climbing, or repetitive bending/lifting. *See, e.g.*, *Tomasik v. Comm'r of Soc. Sec.*, No. CIV.A. 09-12816, 2010 WL 1981202, at *7 (E.D. Mich. Apr. 9, 2010), *report and recommendation adopted*, No. 09-12816, 2010 WL 2011496 (E.D. Mich. May 17, 2010) (quotation marks and citation omitted) (noting that "so long as the individual can stoop and crouch occasionally, the base of sedentary and light jobs is virtually intact"). But Plaintiff argues that these limitations, when combined, would preclude her from stooping. (Doc. 12 at 8). And, without the ability to stoop, she is unable to work. (*Id.*) Defendant responds that stooping is not required to perform the jobs identified by the vocational expert. (Doc. 14 at 8–9). But the record is silent on this point. Indeed, at the hearing, the ALJ did not pose hypotheticals for the VE that incorporated all of Dr. Thompson's limitations with which the ALJ seemed to agree. (*See* Tr. 846–47). Had the ALJ posed a hypothetical incorporating these limitations, the VE perhaps would have come to different conclusions than she did. And, in turn, the ALJ's decision also might have been different. The ALJ must do this work in the first instance because it is her, "not the court, who must determine what jobs can be performed by [P]laintiff in light of her limitations." *Hankinson*,

2020 WL 240812, at *3. To hold otherwise would "invit[e] this [C]ourt to perform a duty which is reserved to the ALJ." *Id.* (citation omitted).

The Undersigned also agrees that there is some evidence in the record that could suggest Plaintiff does not need additional limitations. But again, "[a]ny effort by this [C]ourt to use other information in the record to explain the ALJ's failure to include those restrictions in [P]laintiff's RFC would constitute impermissible post hoc rationalization." *Id.* (citing *Miller v. Comm'r of Soc. Sec.*, No. 1:13-CV-1872, 2014 WL 3950912, at *13 (N.D. Ohio Aug. 12, 2014) ("The Court agrees that there is some evidence in the record speaking to Plaintiff's ability to meet quotas. The ALJ, however, did not discuss her decision to omit the limitation, and relying on other information in the record to explain the omission would result in the Court engaging in post hoc rationalization, which is prohibited."); *Kolasa v. Comm'r of Soc. Sec.*, No. 13-CV-14311, 2015 WL 1119953, at *10 (E.D. Mich. Mar. 11, 2015) (noting that "[w]hether there is evidence in the record to support the ALJ's less restrictive RFC is not relevant because the ALJ did not discuss his decision not to adopt the more restrictive limitation suggested by Dr. Blum, and relying on other information in the record to explain that omission would require this Court to engage in the *post hoc* rationalization that case law clearly prohibits")).

In sum, while the ALJ was not required to discuss every piece of evidence in the record or adopt Dr. Thompson's opinion verbatim, she was required to explain why she chose to omit Dr. Thompson's postural limitations from Plaintiff's RFC even though the ALJ appeared to agree with them. *See Thompson v. Comm'r of Soc. Sec.*, 2014 WL 356974, at *3 (N.D. Ohio Jan. 31, 2014) (remanding where ALJ failed to "discuss why she omitted [state agency doctors'] production quotas limitation" from the RFC). As a result, remand is warranted.

On remand, the ALJ should either accommodate Dr. Thompson's limitations regarding squatting/crouching, climbing or otherwise discuss these limitations.

### B. Obesity

Plaintiff also contends that the ALJ erred in failing to evaluate the effect of her obesity on her ability to ambulate. (*See* Doc. 12 at 9–11). But the Court's decision to recommend reversal and remand on her first assignment of error alleviates the need for analysis on her remaining assignment of error. Nevertheless, if the recommendation is adopted, the ALJ may consider Plaintiff's remaining assignment of error on remand if appropriate.

## IV. CONCLUSION

Based on the foregoing, it is **RECOMMENDED** that the Court **REVERSE** the Commissioner's non-disability finding and **REMAND** this case to the Commissioner and Administrative Law Judge under Sentence Four of § 405(g).

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a de novo determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation de novo, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: March 12, 2020                                    /s/ Kimberly A. Jolson
                                                        KIMBERLY A. JOLSON
                                                        UNITED STATES MAGISTRATE JUDGE